## HOLLAND v. DEPARTMENT OF CORRECTIONS
### Case No. 84-1788R
State of Florida, Division of Administrative Hearings
September 14, 1984

### APPEARANCES OF COUNSEL

Petitioners, pro se.
**John Rimes** for respondent.

### OPINION

ROBERT T. BENTON II, Hearing Officer.

This matter came on for final hearing in Raiford, Florida at the Union Correctional Institution on June 18, 1984. The Division of Administrative Hearings received a transcript of proceedings on August 13, 1984, and respondent's proposed order on August 24, 1984.

These proceedings began with the filing, on May 14, 1984, of a petition for determination of the invalidity of existing rules, addressed to Rule 33-3.07, Florida Administrative Code, to respondent's Policy

and Procedure Directive 4.07.02, and to Union Correctional Institution Policy Memorandum 82-14.

## ISSUE

Whether grievance procedures set forth in the provisions challenged are arbitrary and capricious and an abuse of respondent's discretion? Whether the policy and procedure directive and policy memorandum should be declared invalid as rules?

## FINDINGS OF FACT

At the various institutions in which respondent houses some 29,000 prisoners, about 8,000 grievances are acted on annually. In addition, departmental personnel in Tallahassee decide 2,000 grievances annually, of which all but two or three hundred are appeals. Nineteen percent of departmental decisions on the merits of grievances are in favor of the inmate.

Not every grievance has been handled in strict adherence to every particular of rule, policy directive and policy memorandum, nor are the requirements these documents lay down always identical. The hearing officer ruled that the merits of any specific grievance proceeding were not relevant. On one occasion, the correctional officer complained of in a grievance was the officer to whom investigation of the grievance was assigned.

At Union Correctional Institution, Dan Williams deals with 200 to 250 grievances monthly, turning back grievances that are not signed, dated or concise, or which do not reflect resort to informal measures. Occasionally, Mr. Williams drafts a preliminary response on the merits or "combine[s] . . . [an investigative] report . . . with the directives and the institutional operating procedures and, based on a collection of those two, . . . draft[s] a preliminary response." (T. 189) Ordinarily, a superior signs the responses Mr. Williams drafts.

Petitioners are inmates at Union Correctional Institution. Joe Lewis Holland and Douglas L. Adams had grievances pending at the time of the hearing. Carl Cribbs and John Russell have filed grievances in the past, but the evidence did now show them to have filed any grievance not already disposed of. Petitioner Rufu did not testify at hearing.

Petitioners do not complain of the procedures attending promulgation of Rule 33-3.07, Florida Administrative Code, which provides:

Inmate Grievance Procedure. The purpose of this procedure is to provide an inmate with a channel for the administrative settlement of the legitimate grievance. A grievance is a formal complaint concern-

184

ing an incident, policy, or condition with the institution or the Department of Corrections. Most valid grievances can be resolved quickly through direct contact with the staff of the institution who are responsible for the particular area of the problem. Inmates should be encouraged to use routine informal remedies prior to initiating a formal grievance. However, when an inmate feels he has sufficient reason to submit an official 'formal grievance, he should obtain a copy of the request form for administrative remedy or appeal; all facts should be listed accordingly. Only one grievance per form can be initiated.

(1) The grievance complaint must be filed no later than 30 calendar days from the date on which the basis of the complaint occurred, unless it is clearly demonstrated by the inmate that it was not feasible to file within such a period.

(2) The Assistant Superintendent of the institution will have the grievance complaint logged and will have a receipt sent to the inmate. He may handle the grievance personally or he may designate appropriate staff members to investigate and/or respond. If a staff member investigates and responds, he too will sign the form along with the Assistant Superintendent. The response should state clearly why the grievance is approved or disapproved. If approved, it should state what action will be taken to correct the problem. One copy will be placed in the inmate file and two copies will be returned to the inmate advising of action taken.

(3) When an inmate feels that he may be adversely affected by submission of his grievance at the institutional level because of its sensitive nature he may mail his grievance directly to the Secretary. He must clearly indicate a valid reason for not initially bringing his complaint to the attention of the institutional staff. Grievances of this type may be sealed in an envelope by the inmate and processed through routine institutional mail channels.

(4) Institutional officials will have up to 30 days, including holidays and weekends from the receipt of the grievance to take action and respond to the inmate. When the grievance is, in the opinion of the Assistant Superintendent, of an emergency nature, a reply should be made as soon as possible.

(5) If the inmate feels his or her grievance has not been satisfactorily resolved at the institutional level, he or she may appeal to the Secretary. If the inmate files a formal grievance form to the Secretary the factual basis for appeal must be clearly stated in Part A and a copy of the original grievance and response at the institutional

level attached. If the inmate fails to provide a reason for appeal or attach a copy of his institutional grievance and response or the Secretary feels that the reason supplied is not adequate, the appeal must be returned to the inmate and reasons for return will be specified in Part B. The Secretary or his designated representative will have a receipt sent to the inmate. He will cause the appeal to be investigated and will have up to 30 days, including weekends and holidays from receipt of the appeal form to make a response. A copy of the response to the inmate will be sent to the Superintendent and a copy filed in the Central Office. The Superintendent's copy will be reviewed and filed in the Institution. The time limit cannot be met either at the institutional or departmental level, the time limit may be extended for a reasonable period not to exceed thirty (30) days. If this action is taken the complainant will be notified in writing with the time of extension noted.

(6) A record must be made of each grievance or appeal and should contain at least the following information: Inmate name, prison number, date of receipt, subject of grievance or appeal, disposition of the grievance or appeal, and date of disposition. A copy of this record should be filed monthly in the Superintendent's or the Secretary's office.

(7) Inmates can be assured that no action will be taken against them resulting from submitting a grievance unless they knowingly and intentionally make a statement which is proved false pursuant to a disciplinary proceeding.

They contend that the rule does not afford a neutral, detached fact finder, and is arbitrary and capricious for that and other reasons.

On the same substantive grounds, and on the additional ground that neither was promulgated as a rule, petitioners challenge Policy and Procedure Directive 4.07.02 (PPD 4.07.02) and Union Correctional Institutional Policy Memorandum 82-14 (UCI Memo 82-14), which provide:

Inmate Grievance Procedure

### I. *Authority*:

The provisions of this directive are authorized by:

A. Florida Statutes, Chapters 944.09(2) and 945.21.

B. Rules and Regulations of the Department of Offender Rehabilitation, Chapter 33-3.07.

186

## II. *General Policy Statement*:

A. The purpose of this procedure is to provide an inmate with a channel for the administrative settlement of a legitimate grievance. A grievance is a formal complaint concerning an incident, policy or condition within an institution or the Department.

B. Most valid grievances can be resolved quickly through direct contact with staff who are responsible in the particular area of the problem. This is the preferred course of action. Staff awareness of the importance of prompt attention and reply to these routine requests will minimize the use of formal grievance procedures.

C. In addition to providing the inmate an opportunity of having a grievance heard, such procedure will assist the Department by providing additional means for internal solution of problems and improve lines of communication. This procedure will also provide a written record in the event of subsequent judicial or administrative review.

## III. *Informal Remedy*:

In most cases an inmate may resolve the problem by discussing it with:

A. The staff member responsible in the particular area of the problem.

B. The Classification Team.

C. The appropriate section head.

D. Other institutional staff.

This method should provide an immediate solution to the problem and can be handled by personal contact, letter or request for interview. An inmate should be encouraged to use routine informal remedy procedures prior to initiating a formal grievance.

## IV. *Formal Institutional Remedy*:

A. The Superintendent may designate the Assistant Superintendent as representative, delegating the authority to receive, review and investigate any grievance of an institutional nature, and to grant and implement relief as approved by the Superintendent.

B. When an inmate has reason to submit an official grievance, a copy of the Request for Administrative Remedy, Form DC-77 (See Sample No. 1) may be obtained from the staff member designated by the Superintendent. The inmate should fill out the identifying data at the top and Part A of the request so that it is legible. All facts

187

should be listed accurately and the aggrieved inmate is requested to substantiate that the informal remedy procedures have been exhausted as stated in the Section above on Informal Remedy.

1. Inmates who cannot read or write or who cannot write legibly are authorized to obtain assistance from other inmates, so long as the assistance requested does not interfere with the security and good order of the institution.

2. In cases where inmate assistance is either not available or cannot be made available, staff members will assist the inmate.

C. Only one issue/question should be listed on each form.

D. The form should then be forwarded to the Superintendent or Assistant Superintendent.

## V. *Time Limit On Filing A Grievance*:

A. The grievance must be filed no later than 30 calendar days from the date on which the grievous complaint occurred or within 30 calendar days after final action was decided which would result in a grievance complaint being initiated.

B. An extension of the 30-day period may be granted when it is clearly demonstrated by the inmate to the satisfaction of the Superintendent or Assistant Superintendent that it was not feasible to file within the initial period.

C. Appeals must be filed within 30 calendar days following the date of disposition of the original institutional grievance.

## VI. *Procedures For Processing Grievance*:

A. The Superintendent or Assistant Superintendent will have the grievance logged and will have a receipt sent to the inmate.

1. The Superintendent or Assistant Superintendent may investigate the grievance personally or may designate an appropriate staff member to investigate and prepare a report.

B. The Superintendent or Assistant Superintendent will evaluate the investigate report for use in formal consideration of the grievance. The Superintendent or Assistant Superintendent will respond to the grievance by completing Part B of Form DC-77.

1. If approved, the response should state what action will be taken to correct the problem.

2. If denied, the response must state the reasons for denial and the information to justify the denial.

C. Distribution will be as follows:

1. The original and second copy will be returned to the inmate.

2. The first copy will be placed in the inmate record.

D. All grievances, except those filed directly with the Regional Directory or Secretary, must be filed at the institution in which the inmate is presently assigned.

1. When the complaint deals with a grievance that has occurred at another location, it will remain the responsibility of the staff at the inmate's present location to handle the grievance.

2. Direct contact with staff at the inmate's prior location may be necessary in resolving the grievance.

## VII. *Direct Grievance Request*:

A. When an inmate feels that because of the sensitive nature or possible adversity by submission of the grievance at the institution, direct submission to the Regional Director or Secretary may be accomplished by use of Form DC-77-A (See Sample No. 2). The inmate may mail in sealed envelope the direct grievance request.

1. The inmate must clearly indicate the reason for not initially bringing the complaint to the attention of the institution staff.

B. Upon receipt of the direct grievance report, the Regional Director, Secretary or designee will have the grievance logged and a receipt sent to the inmate. If the Regional Director, Secretary or designee feels that the inmate's reason for not processing the complaint through institutional channels is invalid, Form DC-77-A will be returned to the inmate, with the reasons for return specified in Part B.

C. Should it be determined that the grievance was properly channeled to the Regional Director or Secretary, the complaint will then be investigated and Part B of Form DC-77-A will be completed.

1. If approved, the response should state what action will be taken to correct the problem.

2. If denied, the response must state the reasons for denial and the information to justify the denial.

D. Distribution will be as follows:

1. Original to inmate.

2. First copy of the response will be filed in the Office of the Regional Director or the Office of the Secretary.

189

3. Second copy will be forwarded to the Superintendent for review and subsequent filing in the institutional inmate record.

## VIII. *Time Limit For Response*:

Response to grievance will be made within 30 calendar days from date of receipt. When, in the opinion of the Superintendent or Assistant Superintendent, Regional Director or Secretary the grievance is of an emergency nature, a reply should be made as soon as possible.

## IX. *Formal Department Level Appeal*:

A. If the inmate feels the grievance has not been satisfactorily resolved at the institution level, an appeal, Form DC-77-A, may be submitted to the Regional Director or Secretary. In such cases, the factual basis for the appeal must be clearly stated in Part A and a copy of Form DC-77 (the original grievance and response at the institutional level) must be attached.

B. Appeals should be forwarded to the Regional Director or Secretary through routine institutional mail channels.

C. If the inmate does not provide substantial reason for appeal or attach a copy of the original grievance and response (Form DC-77) and the Regional Director or Secretary determines that the reason lacks support, the appeal request will be returned to the inmate and findings for return will be specified in Part B.

## X. *Action By The Regional Director Or Secretary*:

A. The Regional Director, Secretary or designee will have a record made of all Form DC-77-A (grievance appeals) received and will have a receipt sent to the inmate.

B. The appeal will be investigated within 30 calendar days from receipt of the appeal.

C. Distribution will be as follows:

1. The original will be returned to the inmate.

2. The first copy will be placed in the inmate record in the Bureau of Offender Records with a copy of Form DS-77 attached.

3. The second copy will be sent to the Superintendent for review and subsequent filing in the institutional inmate record.

## XI. *When Time Limit Cannot Be Met*:

The period of time referred to for action at the institution, Region or Central Office level may be extended for a reasonable period not to

190

exceed 30 days, upon finding that the circumstances are such that the initial period is insufficient to make an appropriate decision. This action must be communicated in writing to the inmate with the time of the extension noted.

## XII. *Record Keeping*:

As previously stated, a record should be made of each grievance or appeal and should contain at least the following information:

A. Inmate name

B. Prison number

C. Date the grievance was filed

D. Date received

E. Nature of grievance or appeal and issue/question to be resolved

F. Disposition of grievance or appeal

G. Date of disposition

A copy of this record, Form DC-78 (See Sample No.3), should be filed monthly in the Superintendent's, Regional Director's or Secretary's office.

## XIII. *Freedom To Use Grievance Procedure*:

Inmates can be assured that no action will be taken against them resulting from submission of a grievance, unless, facts show acts designed to render false or misleading statements.

Policy and Procedure Directive 4.07.02.

### 82-14.1 *Authority*

A. Florida Statutes, Chapter 944.09, 945.21

B. Department of Corrections Policy & Procedure Directive 4.07.02.

### 82-14.2 *Purpose*

A. The purpose of this procedure is to provide an inmate with a channel for the administrative settlement of a legitimate grievance. A grievance is a formal complaint concerning an incident, policy or condition within an institution or the Department of Corrections.

B. Most valid grievances can be resolved quickly through direct contact with staff who are responsible in the particular area of the problem. This is the preferred course of action. Staff awareness of the importance of prompt attention and reply to these routine requests will minimize the use of formal grievance procedures.

191

C. In addition to providing the inmate an opportunity of having this grievance heard, such a procedure assists the Administration by providing an additional vehicle for internal solution of problems and improves lines of communication. Further, it provides a written record in the event of subsequent judicial or administrative review.

## 82-14.3 *Informal Remedy*

In most cases, an inmate may resolve his problem by discussing it with (1) the staff member responsible in the particular area of the problem; (2) his Treatment Team; (3) the appropriate Depart- ment Head; or (4) other institutional staff. This method should provide an immediate resolution to the problem and can be handled by personal contact, letter, request for interview form, et cetera. An inmate should be encouraged to use the informal remedy procedures prior to initiating a formal grievance.

## 82-14.4 *Formal Institutional Remedy*

The Assistant Superintendent shall have the authority to receive, review, and investigate any grievance of an institutional nature and to grant and implement relief as approved by the Superintendent. When an inmate feels he has reason to submit an official grievance, he should obtain a copy of the Request for Administrative Remedy Form (DC 1-303) from the appropriate Classification Team Specialist or the Law Librarian. He should check the box marked "Assistant Superintendent" and fill out the identifying data at the top of the form and Part A of the request (DC 1-303) so that it is readable. All facts should be listed accurately, and the aggrieved inmate is directed to substantiate that the informal remedy procedures have been exhausted as stated in Section 82-14.3 above.

Only one grievance per form can be initiated. The grievance is to be filed by one individual inmate with his signature only appearing on the grievance. The DC 1-303 then should be forwarded to the Assistant Superintendent's Office. Grievances submitted or signed by more than one inmate will be returned unanswered to the senders as being improperly filled out.

Inmates who cannot read or write, or who cannot write legible, are authorized to obtain assistance from other inmates, so long as the assistance requested does not interfere with the security and good order of the institution. In cases where inmate assistance is either not available or cannot be made available, staff members will assist the inmate.

192

## 82-14.5 *Time Limit On Filing Complaint*

The grievance must be filed no later than 30 calendar days from the date on which the grievous complaint occurred or within 30 calendar days after the final action was decided which would result in a grievance complaint being initiated. An extension of the 30-day period may be granted when it is clearly demonstrated by the inmate to the satisfaction of the Assistant superintendents that it was not feasible to file within the initial period. Appeals must be filed within 30 calendar days following the date of disposition of the original institutional grievance.

## 82-14.6 *Procedures For Processing Grievance*

The Assistant Superintendent will have the grievance logged and will have a receipt sent to the inmate. They may investigate the grievance personally, or may designate an appropriate staff member to investigate and prepare a report for use in formal consideration of the grievance. The Assistant Superintendents will respond to the grievance (Part B), clearly stating why the grievance is approved or denied. If approved, the response should state what action will be taken to correct the problem. If denied, the response must state the reasons for denial and the information to justify denial. The first copy will be placed in the inmate file, and the original and second copy will be returned to the inmate.

All grievances, except those filed directly with the Regional Director or Secretary, must be filed with staff at the institution to which the inmate is presently assigned. When the complaint deals with a grievance that has occurred at another location, it will remain the responsibility of the staff at the inmate's present location to handle the grievance. Direct contact with staff at the inmate's prior location may be necessary to resolve grievances which occur under this provision.

When an inmate feels that because of its sensitive nature he may be adversely affected by submission of his grievance at the institution level, he may, by checking the box marked "Secretary, Florida Department of Corrections" on Form DC 1-303, submit his grievance directly to the Regional Director or Secretary in a sealed envelope processed through routine institutional mail channels. He must clearly indicate a valid reason for not initially bringing his complaint to the attention of the institution staff. Upon receipt of Form DC 1-303 the Regional Director, Secretary, or his designee will have the grievance logged in and a receipt sent to the inmate. If the Regional Director, Secretary, or his designee feels that the inmate's reason for not processing his complaint through institu-

tional channels is invalid, Form DC 1-303 will be returned to the inmate, with the reasons for return specified in Part B. Should it be determined that the grievance was properly channeled to the Regional Director or Secretary, the complaint will then be investigated and the original of Form DC 1-303, with appropriate response (Part B), will be forwarded to the inmate. The first copy of the response will be filed in the office of the Regional Director or the office of the Secretary; the second copy forwarded to the Superintendent for his review and subsequent filing in the institutional inmate file.

### 82-14.7 *Time Limit For Response*

Responses to grievances will be made within 30 calendar days from date of receipt. When in the opinion of the Assistant Superintendents, Regional Director, or Secretary, the grievance is of an emergency nature, a reply should be made as soon as possible.

### 82-14.8 *Formal Department Level Appeal*

A. If the inmate feels his grievance has not been satisfactorily resolved at the institutional level, he may appeal, using Form DC 1-303, checking the appropriate box and submitting his appeal to the Regional Director, Secretary or designee. In such cases, the factual basis for appeal must be clearly stated in Part A and a copy of Form DC 1-303, the original grievance and response at the institutional level, must be attached.

B. Appeals should be forwarded to the Regional Director or Secretary through routine institutional mail channels.

C. If the inmate does not provide a reason for appeal, or attach a copy of his original grievance and response, or the Regional Director or Secretary feels that the reason supplied is not adequate, the appeal request will be returned to the inmate and reasons for return will be specified in Part B.

### 82-14.9 *Action By The Director*

The Regional Director, Secretary or designee will have a record made of appeals received and will have a receipt sent to the inmate. He will cause the appeal to be investigated and will have up to 30 calendar days from receipt of the appeal form to make a response. The original Direct Appeal Form will be returned to the inmate. The first copy (with copy of the Institutional Appeal attached) will be placed in the inmate record in the Bureau of Offender Records. The second copy will be sent to the Superintendent for his review and subsequent filing in the institutional inmate file.

**194**

## 82-14.10 *When Time Limit Cannot Be Met*

The period of time referred to for action at the institution, Region, or Department level may be extended for a reasonable period not to exceed 30 days, upon finding that the circumstances are such that the initial period is insufficient to make an appropriate decision. This action must be communicated in writing to the complainant with the time of the extension noted.

## 82-14.11 *Record Keeping*

As previously stated, a record should be made of each grievance or appeal and should contain at least the following information: Inmate Name, Prison Number, Date Grievance was filed, Date of Receipt, Nature of Grievance or Appeal, and Issue/Question to be resolved, Disposition of Grievance or Appeal, and Date of Disposition. A copy of this record should be filed monthly in the Assistant Superintendents', Regional Director's or Secretary's Office.

## 82-14.12 *Freedom to Use Grievance Procedure*

Inmates can be assured that no action will be taken against them resulting from submission of an grievance unless they knowingly and intentionally make a statement which is proven false beyond a reasonable doubt pursuant to disciplinary procedures. An inmate should report to Administrative Staff any threats or other punitive type actions taken by staff personnel.

## 82-14.13 *Fact Finder*

This facility has been selected to initiate a pilot program utilizing volunteer attorneys to hear inmate grievances. These scheduled visits will be coordinated by the Assistant Superintendent for Programs, who has been designated as institutional coordinator. Hearings will be administrative in nature and the attorneys may utilize tape recorders if desired. Fact Finders will forward their written reports to D.H. Brierton, Project Coordinator. The Fact Finders report is advisory and will be considered by the Secretary in making his final decision on the grievance.

Union Correctional Institution Policy Memorandum 82-14.

George W. Bedingfield, respondent's inmate grievance administrator, conceded that UCI Memo 82-14.13 states matters not covered by Rule 33-3.07, Florida Administrative Code. As a practical matter, however, funds for the experimental project contemplated by UCI Memo 82-14.13 are now depleted. Respondent conceded at hearing that so much of PPD 4.07.02 as provides, "The aggrieved inmate is requested to

**195**

substantiate that the informal remedy procedures have been exhausted . . .," and like language in UCI Memo 82-14.4, depart from Rule 33-3.07, Florida Administrative Code.

Respondent's proposed order includes proposed findings of fact which have been adopted, in substance, in large part. Proposed findings have been rejected where unsupported by the weight of the evidence, immaterial, cumulative or subordinate.

## CONCLUSIONS OF LAW

Petitioners Holland and Adams, but no other petitioner, showed themselves substantially affected by grievance procedures, on account of the pendency of grievances they had filed. Neither filing a grievance at some time in the past nor the prospect of future grievance proceedings is sufficient to make a person "substantially affected," Section 120.56(1), Florida Statutes (1982), with the immediacy requisite for a rule challenge. *Department of Corrections v. Jerry*, 353 So.2d 1230 (Fla 1st DCA 1978) *cert. den.* 359 So.2d 1215 (Fla. 1978).

Although UCI Memo 82-14 does not purport to apply outside Union Correctional Institution, it resembles the policy directive stricken as an unpromulgated rule in *Department of Corrections v. Sumner*, No. AM-256 (Fla. 1st DCA; March 22, 1984), in that it "applies to future occurrences rather than resolving" any particular controversy arising out of past events. There as here the "superintendent's memorandum applies to everyone subject to the superintendent's power . . . [and] its applicability is . . . general." Rule 33-1.07, Florida Administrative Code, authorizes superintendents of correctional institutions to adopt operating procedures for their particular institutions, but Rule 33-1.07(4), Florida Administrative Code, provides:

> Any material contained in such Directives and Operating Procedures that meets the definition of "rule" contained in Section 120.52(14), Florida Statutes, shall be promulgated as a rule of the department, unless specifically exempted by Florida Statutes.

There is no such statutory exemption, and the *Sumner* case compels the conclusion that UCI Memo 82-14 is a rule subject to challenge. PPD 4.07.02 applies throughout the state.

To some extent both UCI Memo 82-14 and PPD 4.07.02 parrot the language of Rule 33-3.07, Florida Administrative Code. To that extent, the question arises whether petitioners can be said to be substantially affected by the policy directive or the policy memorandum, as opposed to the rule itself. In the absence of any evidence otherwise, it might be presumed that a petitioner was affected by the duly promulgated rule,

196

rather than by any ersatz replica. Here the evidence showed that PPD 4.07.02 and UCI Memo 82-14, as opposed to the rule itself, were used in processing grievances. But the effect of a document reiterating a duly promulgated rule is indistinguishable from the effect of the rule itself. In law and in fact, the effect of the reiteration is insubstantial, where a duly promulgated rule has the same legal and factual effect. Respondent has as much as conceded that portions of PPD 4.07.02 and UCI Memo 82-14 that do vary from Rule 33-3.07, Florida Administrative Code, should be declared invalid as rules.

Petitioners argue not that respondent lacks substantive authority to promulgate rules governing grievances, see Section 845.21, Florida Statutes (1983), but that Rule 33-3.07, Florida Administrative Code, is arbitrary and capricious. See *Agrico Chemical Co. v. State Department of Environmental Regulation*, 365 So.2d 759, 963 (Fla 1st DCA 1979) cert. den. sub. nom. *Askew v. Agrico Chemical Co.*, 376 So.2d 74 (Fla. 1979). Petitioners' efforts to show that Rule 33-3.07, Florida Administrative Code, was arbitrary and capricious consisted chiefly of attempts to prove arbitrary and capricious results in individual cases. They also proved that, in one instance, the correctional officer whose conduct was complained of was assigned to investigate the grievance, but this was not shown to be attributable to the rule. Petitioners have not carried their burden to show that Rule 33-3.07, Florida Administrative Code, is arbitrary or capricious.

It is, accordingly,

ORDERED:

1. Petitioners John Russell, Nyadzi Dzinokunka Rufu and Carl Cribbs are dismissed as parties to this proceeding.

2. To the extent PPD 4.07.02 and UCI Memo 82-14 deviate from Rule 33-3.07, Florida Administrative Code, they are declared invalid as rules, because they have not been duly promulgated as rules.

3. The petition is otherwise denied.